**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RUDOLPH F. VIENER** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil No. 1:16cv18-HSO-MTP** |
| | § | |
| **MICHAEL J. CASANO** | § | **DEFENDANT** |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [47] AND DENYING AS MOOT PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [49]**

BEFORE THE COURT are the Motion for Summary Judgment [47] filed by

Defendant Michael Casano and the Motion for Partial Summary Judgment [49]

filed by Plaintiff Rudolph Viener.  These Motions are fully briefed.

After due consideration of the pleadings, the record, the briefs of the parties,

and relevant legal authority, and being otherwise fully advised in the premises, the

Court finds that Defendant's Motion for Summary Judgment [47] should be granted

and Plaintiff's claims should be dismissed.  Plaintiff's Motion for Partial Summary

Judgment [49] should be denied as moot.

## I.   BACKGROUND

On July 8, 2015, Plaintiff Rudolph Viener's ("Plaintiff") former spouse Laurie

Viener Casano ("Laurie") met Defendant Michael Casano ("Defendant") during a

trip to Sandestin, Florida, and the two began a romantic relationship.  Pl.'s Mem.

Supp. Mot. [50] at 2-3; Casano Dep. [47-2] at 18:19-19:6.  Plaintiff and Laurie were

1

still married at the time Laurie's relationship with Defendant began.  Compl. [1] at

2.  Plaintiff discovered the relationship in late July 2015, and Laurie left the

marital home around August 2, 2015.  *Id.*  Plaintiff filed for divorce on August 7,

2015.  Pl.'s Divorce Pet. [60-1] at 2.  Laurie filed for divorce three days later.

Laurie's Divorce Pet. [60-2] at 1.  The couple divorced on December 9, 2015.  J. of

Divorce [47-4].  Laurie married Defendant on February 20, 2016.  Casano Dep. [49-

1] at 39:10-12.

Plaintiff filed a Complaint [1] against Defendant in this Court on January 20,

2016, invoking diversity jurisdiction and advancing claims under Mississippi law for

alienation of the affections of his former spouse Laurie.  Compl. [1] at 1.  The

Complaint alleges that Defendant's conduct "resulted in an emotional relationship

and sexual intercourse" between Defendant and Laurie, alienating her affections

from Plaintiff.  *Id.* at 3.  Plaintiff maintains that he and Laurie would still be

married if not for Defendant's actions.  *Id.* at 3-4.

In addition to his claim for alienation of affections of his former spouse,

Plaintiff seeks damages for Defendant's negligent and intentional infliction of

emotional distress and for the alienation of the affections of Plaintiff's children from

their father.  *Id.* at 5.  Plaintiff also seeks punitive damages, attorneys' fees, and

costs.  *Id.* at 5-6.

Defendant avers that Plaintiff's marriage was "impaired beyond repair long

before the Defendant met Laurie" and that, "[a]s a result of the longstanding,

2

progressive and chronic deterioration of the marital relationship, little or no affection, love, society, companionship, services or comfort remained as of July 8, 2015." Answer [6] at 3. Defendant maintains that any loss of remaining affections was due to Plaintiff's own conduct, for which Defendant is not liable. *Id.* Defendant denies that Plaintiff is entitled to punitive damages. *Id.* at 4-7.

On October 17, 2016, Defendant filed the present Motion for Summary Judgment [47] arguing that the substantive law of Louisiana governs Plaintiff's claims, Def.'s Mot. [47] at 1, and that this choice of law question is dispositive because Plaintiff's claims for alienation of affections and emotional distress are not cognizable under Louisiana law, *id.* at 4; *see also* Answer [6] at 1. Plaintiff has filed a Response [55] and Memorandum of Authorities [56] in opposition to Defendant's Motion [47], and Defendant has filed a Reply [59].

Plaintiff filed his Motion for Partial Summary Judgment [49] on October 17, 2016, seeking judgment in his favor on all issues of liability. Pl.'s Mot. [49] at 1. Defendant has filed a Response [52] and Memorandum Brief [53] in opposition, and Plaintiff has filed a Reply [60] and a Reply Memorandum [61].[1]

---

[1] Local Uniform Civil Rule 7(b)(6) provides that "[m]ovant's original and rebuttal memorandum briefs together may not exceed a total of thirty-five pages." L.U. CIV. R. 7(b)(6). Plaintiff's original and rebuttal briefs exceed Rule 7(b)(6)'s page limit. Because Plaintiff's Motion for Partial Summary Judgment [49] will be denied as moot, the Court will not strike Plaintiff's Reply Memorandum from the record for failure to comply with this requirement. However, Plaintiff is instructed to comply with the Local Uniform Civil Rules in future pleadings filed in this Court.

## II.  DISCUSSION

A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249).  In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

4

B.   Conflict of Laws

Sitting in diversity, a district court must apply the choice of law rules of the forum state to determine which state's substantive law applies.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941) (holding that, in diversity cases, federal courts must apply the conflict of laws rules of the forum states)).

"Choice of law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation."  *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006) (citing *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1038 (Miss. 1985)).  Plaintiff alleges alienation of affections, a cause of action available under Mississippi law in which a plaintiff must establish the following elements: "(1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and the loss."  *Bland v. Hill*, 735 So. 2d 414, 417 (Miss. 1999).  This presents a true conflict between the law of Mississippi and the law of Louisiana, which does not recognize alienation of affections as a cognizable claim.  *See Saunders v. Alford,* 607 So. 2d 1214, 1216 (Miss. 1992) (comparing the availability of the tort in Mississippi versus Louisiana).

The forum state, Mississippi in this case, resolves choice of law issues by applying the following steps: (1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract, as each area of law has its own choice of law provisions; and

5

(3) look to the relevant sections of the Restatement (Second) of Conflict of Laws. *See Zurich*, 920 So. 2d at 433-34.

"The law of the forum determines whether an issue in the action is substantive or procedural in nature." *Hartford Underwriters Ins. Co. v. Foundation Health Servs. Inc.*, 524 F.3d 588, 593 (5th Cir. 2008) (quotation omitted). The conflicting laws at issue in this case are substantive tort laws, as the resolution of the conflict will determine whether Plaintiff has a viable cause of action for alienation of affections, an action arising in tort. *Hancock v. Watson*, 962 So. 2d 627, 629-30 (Miss. Ct. App. 2007).

Finally, the Court must look to the Restatement (Second) of Conflict of Laws to resolve tort choice of law questions. *See Zurich*, 920 So. 2d at 433-34.

> In matters of substantive tort law, Mississippi follows the "center of gravity" test of the Restatement (Second) of Conflict[] of Law[s] [§ 145], under which a court applies the law of the state with the most substantial contacts with the parties and the subject matter of the action. A court must consider the place of injury, the place where the [conduct causing the injury] occurred, the domicile or residence of the parties, and the place where the parties' relationship is centered.

*Huss v. Gayden*, 571 F.3d 442, 450 (5th Cir. 2009) (internal citations omitted).

The contacts "are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145. The Mississippi Supreme Court does not apply the "center of gravity" test, also referred to as the "most significant relationship" test, in a mathematical or mechanical fashion, but rather balances the factors as a practical way to determine

6

the law applicable to an issue. *Zurich*, 920 So. 2d at 435; *see also Boardman*, 470 So. 2d at 1034 (focusing on the contacts only as they apply to the "outcome-determinative question").

In addition to Section 145 of the Restatement, which addresses conflict of laws in tort actions generally, Section 154 speaks specifically to actions for interference with the marriage relationship:

> The local law of the state where the conduct complained of principally occurred determines the liability of one who interferes with a marriage relationship, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 154.

The commentary to Section 154 explains that, when a defendant's injurious conduct takes place in multiple states, the principal place of the defendant's conduct decreases in importance and "there is a corresponding increase in the importance of such other contacts." *Id.* at cmt. d. The Restatement commentary directs courts to consider other factors, including the location "where the defendant's conduct had an impact upon the spouse with whom he dealt," the domicile of the parties, and the matrimonial domicile, "which is the state that has the closest relationship to, and the greatest interest in, the spouses." *Id.* at cmt. c.

After a court has conducted these inquiries, the determination of which state has the most significant interest in the subject matter of the litigation creates a de facto presumption of which state's law to apply. *Zurich*, 920 So. 2d at 433 n.2. This

7

presumption may be rebutted by application of the general conflict of laws principles in Section 6 of the Restatement, which balances competing public policy considerations. *See id.; Hartford,* 524 F.3d at 597.

Mississippi courts will not enforce another state's substantive law "where to do so would be offensive to the deeply ingrained or strongly felt public policy of" the State of Mississippi. *Boardman*, 470 So. 2d at 1038. The Mississippi Supreme Court has as yet "found only two examples of another state's law which were offensive to Mississippi's deeply ingrained public policy," neither of which are applicable to alienation of affections cases. *Zurich*, 920 So. 2d at 437 (citing *Mitchell v. Craft*, 211 So. 2d 509, 514 (Miss. 1968) (applying Mississippi comparative negligence statute instead of Louisiana contributory negligence statute when all parties were citizens of Mississippi); *McNeal v. Adm'r of McNeal's Estate*, 254 So. 2d 521, 524 (Miss. 1971), abrogated by *Burns v. Burns*, 518 So. 2d 1205, 1211 (Miss. 1988) (applying Mississippi interspousal immunity barring an action instead of Louisiana direct action statute that would have permitted a widow and a child to sue a deceased in tort)).

C.   Analysis

As an initial matter, the Court notes that Plaintiff confuses the analysis of amenability to suit in a particular forum with choice of law. Much of the authority cited by Plaintiff addresses only the minimum contacts necessary to establish personal jurisdiction over a defendant, and does not speak directly to conflict of laws

principles. *See* Pl.'s Mem. Resp. [56] at 12-15; *see also Miller v. Provident Advert. & Mktg., Inc.,* 155 So. 3d 181, 194 n.13 (Miss. Ct. App. 2014) (distinguishing between finding that Mississippi had personal jurisdiction over a defendant and the application of the "most significant relationship" test to determine which state's substantive law applied in an alienation of affections case). That a "defendant may have sufficient contacts with Mississippi to render that defendant amenable to suit here does not necessarily mean that Mississippi substantive law governs the substantive rights and liabilities of the parties" under a conflict of laws analysis. *Boardman*, 470 So. 2d at 1035; *accord McDaniel v. Ritter*, 556 So. 2d 303, 310 (Miss. 1989) ("Minimum contacts suffice for in personam jurisdiction. Choice of law seeks the state where the contacts are maximized.").

Defendant does not argue that Mississippi lacks personal jurisdiction over him, but rather contends that the substantive law of Louisiana governs Plaintiff's claims. Def.'s Mem. Supp. Mot. [48] at 15-16. Applying the "center of gravity" test set forth by the Restatement (Second) of Conflict of Laws § 145, the Court concludes that Louisiana law governs this dispute.

1. <u>Application of the "center of gravity" test in Section 145 of the Restatement</u>

In considering the first two steps in the choice of law analysis, the places where the injury and the conduct causing the injury occurred, the record in this case shows that Defendant and Laurie spent time together in Florida, Mississippi, Louisiana, and Alabama prior to Laurie's divorce from Plaintiff. *See* Casano Dep.

[47-2] at 26:3-13; Viener Dep. [60-6] at 117:23-118:24.  It is conceivable that the law of any of these states could potentially apply under the first two factors.

While the Court cannot precisely determine the extent of how the relationship progressed in each state, it is apparent that much, if not most, of the conduct between Defendant and Laurie allegedly leading to the alienation of Laurie's affections occurred in Louisiana.  A substantial amount of the communications between Laurie and Defendant, including text messages and phone calls, would have been sent and received in Louisiana where Laurie was residing at the time.[2]  *See* Casano Dep. [49-1] at 30:10-16; Def.'s Mem. Supp. Mot. [48] at 11; *see also Hancock,* 962 So. 2d at 630 (finding "the manner and frequency and content of [the] communications outside of . . . face-to-face meetings" relevant to the choice of law analysis).  While Defendant called and texted Laurie from Mississippi on some occasions, he testified that he was at other times located in Florida or Alabama when he communicated with her.  Casano Dep. [47-2] at 133:7-19; Def.'s Mem. Supp. Mot. [48] at 11.

During the period between July 8, 2015, and the divorce on December 9, 2015,[3] Defendant and Laurie spent time together in Louisiana on numerous

---

[2] Plaintiff alleges that between July 15, 2015, and August 4, 2015, Defendant and Laurie exchanged 571 text messages.  Pl.'s Divorce Pet. [60-1] at 2; *see also* Viener Dep. [60-6] at 117:7-9 (claiming Laurie and Defendant exchanged approximately 1,100 text messages within a three-week period).

[3] "[A] claim of alienation of affection accrues when the alienation or loss of affection is finally accomplished." *Fulkerson v. Odom*, 53 So. 3d 849, 852 (Miss. Ct. App. 2011) (quoting *Hancock,* 962 So. 2d at 631).  The relevant time period during which the Court should consider the conduct of the parties involved in this case is not entirely clear.  *See Anderson*

occasions.  Casano Dep. [47-2] at 26:3-13; 27:6-12; Casano Dep. [49-1] at 30:10-20.

It is undisputed that Laurie visited Defendant in Diamondhead, Mississippi, at

least once during this period; however, "[d]ue to the nature of the marital

relationship and the type of conduct necessary to create a loss of affection or

consortium, [the significant relationship test] cannot be satisfied simply by an

allegation that an extramarital affair took place" in Mississippi.  *Hancock*, 962 So.

2d at 630; *see also Zurich,* 920 So. 2d at 436 ("[T]he fact that a cause of action arose

in Mississippi and that Mississippians are involved does not in itself generate an

interest in Mississippi that is superior to that of another state.").

The third factor, the domicile, residence, and place of business of the parties,

supports the application of either Mississippi or Louisiana law.  During the time

period between when Laurie met Defendant and became divorced from Plaintiff, it

is undisputed that Laurie and Plaintiff were residents of Louisiana, and Defendant

---

*v. Ladner*, 198 So. 3d 381, 387-88 (Miss. Ct. App. 2016), reh'g denied (June 7, 2016), cert. denied, 202 So. 3d 617 (Miss. 2016) (finding a genuine issue of material fact as to whether alienation of affections was accomplished when the plaintiff's wife left the marital home, when the couple filed for divorce, or when the divorce was finalized).

Plaintiff filed for divorce on August 7, 2015, and Laurie filed for divorce on August 10, 2015.  Pl.'s Divorce Pet. [60-1] at 2; Laurie's Divorce Pet. [60-2] at 1.  The Court notes that the day Laurie filed for divorce could arguably be when the loss of affections was accomplished, such that subsequent events would be irrelevant because Laurie's affections for Plaintiff could no longer be alienated after August 10, 2015.  Of course, "[i]t is logical to assume that there was loss of affection at some point prior to the actual filing of the complaint for divorce."  *Anderson*, 198 So. 3d at 386.  In any event, this factual issue is not material in this case, as the Court will assume for purposes of deciding Defendant's Motion [47] that the alienation of affections would surely have been accomplished no later than when the Vieners' divorce became final on December 9, 2015.  *See* J. of Divorce [47-4].  Plaintiff's references to subsequent events, such as Defendant and Laurie's February 2016 marriage in Mississippi, are irrelevant to the center-of-gravity inquiry.  *See* Pl.'s Mem. Resp. [56] at 6, 12.

was a resident of Mississippi who practiced law in Mississippi.  Compl. [1] at 1-2; Casano Dep. [49-1] at 8:9-22.  Plaintiff continues to reside in Louisiana, while Defendant and Laurie also currently reside with the children of the Viener marriage in Louisiana.  Compl. [1] at 1; Def.'s Reply [59] at 2 n.2.

The Court finds that the final factor, the place where the relationship between the parties is centered, supports the application of Louisiana law.  Plaintiff and Laurie were married in Louisiana in 2000, and they resided together in Louisiana until 2015.  *See* Viener Dep. [47-1] at 18:20-24; Pl.'s Divorce Pet. [60-1] at 1.  Both of the Viener children were born and raised in Louisiana, and Plaintiff and Laurie divorced in Louisiana.  *See* Pl.'s Divorce Pet. [60-1] at 3; J. of Divorce [47-4].  Louisiana was the state that assumed jurisdiction over their divorce proceedings and over the child custody and property issues arising out of the divorce.  *See* Def.'s Mem. Supp. Mot. [48] at 3.

   2. Application of Restatement Section 154

In addition to the "center of gravity" test generally applicable to tort actions in Section 145 of the Restatement, the more specifically applicable Section 154 dealing with interference in a marriage relationship provides that the "law of the state where the conduct complained of principally occurred" should be applied unless, as here, the conduct occurred in multiple states.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 154.  In cases such as these, the commentary to Section 154

12

instructs the Court to consider contacts including the location of where the injury occurred, the domicile of the parties, and the matrimonial domicile.  *Id.* at cmt. c.

The Court is persuaded that, even if Defendant's conduct was not concentrated in Louisiana, the matrimonial domicile, the location where the injury occurred, and the domicile of the parties all support a finding that Louisiana law governs Plaintiff's claims.  The alleged injury, as well as the conduct causing it, occurred in both Louisiana and Mississippi.  Plaintiff's domicile is Louisiana, while Defendant's domicile and his business were located in Mississippi.  The relationship between Plaintiff and Laurie was centered in Louisiana, where the divorce and custody matters were adjudicated.  When all of these factors are considered, Louisiana has the most significant relationship to Plaintiff's claims.

3. <u>Application of Restatement Section 6</u>

Because the Court has determined that Louisiana has the most significant relationship to the issues in this case, a "de facto presumption" arises that Louisiana law controls.  Applying the principles of Restatement Section 6, the Court finds that the presumption that Louisiana law applies is not rebutted by balancing the state policy interests involved.  *See Hartford*, 524 F.3d at 597; *Owens v. Miss. Farm Bureau Cas. Ins. Co.*, 910 So. 2d 1065, 1072 (Miss. 2005) (the presumption is not rebutted when the public policy at issue "is not so strong as to require the use of Mississippi law when a determination has been made that the center of gravity is in another jurisdiction").

13

The Court notes that the foundation for the tort of alienation of affections in Mississippi "is the protection of the love, society, companionship, and comfort that form the foundation of a marriage." *Bland,* 735 So. 2d at 417 (quoting *Saunders,* 607 So. 2d at 1215). While the purpose of the action for alienation of affections is to protect marriages, the State's interest is not as strong in cases involving non-Mississippi marriages, such as Plaintiff and Laurie's. *Miller,* 155 So. 3d at 193.

Mississippi is one of the few states that has not abolished this cause of action, and has repeatedly declined to do so. *Fitch v. Valentine*, 959 So. 2d 1012, 1018-20 (Miss. 2007); *Bland,* 735 So. 2d at 418. The tort appears to have survived in Mississippi primarily based on the State's interest in protecting Mississippi marriages. *See, e.g., Thomas v. Skrip,* 876 F. Supp. 2d 788, 798 (S.D. Miss. 2012) ("[G]iven Mississippi's determination to retain a cause of action for alienation of affections, Mississippi has an interest in protecting *its residents'* rights in *their* marital relationships and providing *them* a convenient forum for redress.") (emphasis added); *Bailey v. Stanford,* No. 3:11-cv-00040-NBB, 2012 WL 569020, at *8 (N.D. Miss. Feb. 21, 2012) ("Mississippi has a strong interest in [alienation of affections] litigation in light of its interest in providing for an effective means of redress for *its citizens*.") (emphasis added); *Knight v. Woodfield*, 50 So. 3d 995, 1000-01 (Miss. 2011) ("Mississippi has an interest in providing a forum for its residents who are injured by nonresident defendants.").

14

In contrast to Mississippi, Louisiana has never recognized the tort of alienation of affections.  *See Saunders*, 607 So. 2d at 1216 ("The courts of Louisiana have never recognized alienation actions."); *Moulin v. Monteleone*, 115 So. 447, 448, 451 (La. 1927), abrogated on other grounds by *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 238 (La. 1989) (finding no "better evidence" for holding that there is no right of action for alienation of affections in Louisiana "than the fact that heretofore, in the 200 years of litigation, since Bienville founded the city of New Orleans and province of Louisiana, no one has ever attempted to assert such right of action").

The Louisiana Supreme Court has articulated "several very obvious reasons" for expressly rejecting it, not the least of which is because "the enjoyment of the services or support or companionship or affections of a person is not a property right" giving rise to an action for damages.  *Moulin*, 115 So. at 448, 451.  Louisiana courts have similarly refused to permit actions for intentional or negligent infliction of emotional distress that are based solely on allegations of an extramarital affair or otherwise too closely resemble claims for alienation of affections.  *See, e.g., Price v. Fuerst*, 24 So. 3d 289, 290 (La. Ct. App. 2009); *Scarmado v. Dunaway,* 650 So. 2d 417, 421 (La. Ct. App. 2005); *Viator v. Miller,* 900 So. 2d 1135, 1141-42 (La. Ct. App. 2005).

In the present matter, the State of Louisiana appears to have a greater interest than the State of Mississippi in the marital relationship affected in this

case.  The Court concludes that enforcement of Louisiana law will not be so "offensive to the deeply ingrained or strongly felt public policy of" Mississippi that it must be set aside.  *Boardman*, 470 So. 2d at 1038; *see also Price v. Litton Sys., Inc.*, 784 F.2d 600, 605-06 (5th Cir. 1986) (noting that Mississippi has only twice before viewed its public policy as "so fundamental as to forbid enforcement of another state's" contrary law).

After considering the relevant factors and public policies to be taken into account in determining the applicable law, the Court is persuaded that Louisiana has a more substantial relationship to the claims in this case than does Mississippi.  *See Zurich*, 920 So. 2d at 433 (applying the law of the place that "has the greatest concern with the specific issues" raised) (quoting *Mitchell v. Craft*, 211 So. 2d 509, 515 (Miss. 1968)).  Because the Court finds that Louisiana law applies, and because Louisiana does not recognize Plaintiff's claims for alienation of affections or emotional distress under these circumstances, Defendant's Motion for Summary Judgment [47] should be granted.

To the extent that Plaintiff is attempting to assert claims against Defendant for alienation of the affections of his two minor children, such claims should also be dismissed.  Compl. [1] at 4-5.  Plaintiff has not cited any authority tending to show that either Louisiana or Mississippi recognizes a cause of action for alienation of affections of a plaintiff's children.  On the contrary, the Mississippi Supreme Court has found that the tort of alienation of affections "is personal to a husband and wife

16

and does not contemplate children" because it "exists to protect the marital relationship, not the familial relationship as a whole." *Brent v. Mathis*, 154 So. 3d 842, 847, 846 (Miss. 2014).[4]

Accordingly, Plaintiff's claims against Defendant will be dismissed with prejudice, and Plaintiff's Motion for Partial Summary Judgment [49] will be denied as moot.

## III.   CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [47] filed by Defendant Michael Casano is **GRANTED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment [49] filed by Plaintiff Rudolph Viener is **DENIED AS MOOT**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff's claims in this case are **DISMISSED WITH PREJUDICE**.  A separate final judgment

---

[4] Plaintiff's children, who are not parties to this suit, would not have standing to bring claims for alienation of affections against Defendant because they "do not have a 'colorable interest' in the alienation of one parent's affections toward the other, nor do they suffer an 'adverse effect' from a defendant who is the cause of that alienation of marital affections." *Brent*, 154 So. 3d at 849.  Louisiana has also expressly rejected this cause of action, noting that "the overwhelming majority of courts which have addressed the issue, have denied a cause of action to children for alienation of their parent's affection."  *Greene v. Roy*, 604 So. 2d 1359, 1365 (La. Ct. App. 1992) (citing Jeffrey F. Ghent, Annotation, *Right of Child or Parent to Recover for Alienation of Other's Affections*, 60 A.L.R. 3d 931).

dismissing this civil action with prejudice will be entered pursuant to Federal Rule
of Civil Procedure 58.

S**O ORDERED AND ADJUDGED**, this the 7th day of March, 2017.

_s/ Halil Suleyman Ozerden_

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

18